UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL REEVES,<br><br>                  Plaintiff,<br><br>v.<br><br>CMP CONSULTANTS, INC., MARITA PONCE, ORLANDO PONCE, DERMOT REALTY MANAGEMENT COMPANY, INC., 101 WEST END REIT, LLC,<br><br>                  Defendants. | **SECOND AMENDED COMPLAINT**<br><br>No. 23-CV-01308-LTS |

Plaintiff Michael Reeves,[1] as and for his Complaint in this action against Defendants CMP Consultants, Inc., Marita Ponce, Orlando Ponce, Dermot Realty Management Company, Inc., and 101 West End REIT, LLC, alleges as follows:

### NATURE OF THE CLAIMS

1. This is an action for monetary damages to redress Defendants' unlawful race discrimination against Plaintiff, who is African American, in violation of the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*. (the "FHA"), the New York State Human Rights Law, and the New York City Human Rights Law.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the New York City and New York State law claims pursuant to 28 U.S.C. § 1367.
3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in this District.

---

[1] This document was prepared with assistance from the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the SDNY.

## PARTIES

4. Plaintiff Michael Reeves is an African American man. At all relevant times, Plaintiff has been a resident of the State of New York. Plaintiff currently resides at 217 Boerum St., Apt. 3B, Brooklyn, NY 11206.
5. Defendant CMP Consultants Inc. ("CMP Consultants") is a corporation incorporated in New York. Per their website, CMP Consultants "specializ[es] in Low-Income Housing Tax Credit Marketing and Compliance (LIHTC). [They] provide extensive knowledge of rules, regulation and procedures involving the full scope of marketing services for Low Income Housing Tax Credit developments." CMP Consultants serves as an agent in the aforementioned capacities for 101 West End Apartments ("101 West End Ave.").
6. Defendant Marita Ponce is sole owner of CMP Consultants.
7. Defendant Orlando Ponce is an employee of CMP Consultants, who Plaintiff frequently corresponded with.
8. Defendant Dermot Realty Management Company, Inc. ("Dermot Realty") is a real estate company that manages 101 West End Ave.
9. Defendant 101 West End REIT, LLC is a real estate investment trust and owner of 101 West End Ave.

## FACTUAL ALLEGATIONS

10. Plaintiff first moved into the neighborhood encompassing 101 West End Ave. in April 1996 to live with his grandmother, who still lives there to this day.
11. While growing up in this area, he walked by the building at 101 West End Ave. multiple times a day, to do things such as grocery shop or play with other kids in the yard across at the Lincoln Center.
12. During this time, 101 West End Ave. was notoriously known by the community to not be welcoming to Black people.
13. There are hardly any Black residents residing at 101 West End Ave. despite the large Black population of the neighborhood.
14. In 2018, Plaintiff entered the New York City Affordable Housing Lottery ("NYC Housing Lottery") for 101 West End Ave.
15. Since September 2020, Plaintiff has been at his present apartment in Brooklyn.
16. Plaintiff has an eviction order for non-pay, and this order would not have been incurred had Defendants not held onto Plaintiff's vouchers for months.
17. Plaintiff
18. On August 3, 2022, Plaintiff won the NYC Housing Lottery at 101 West End Ave. Plaintiff was instructed by Defendants to send a copy of his ID and Social Security card in order to start the process.
19. On August 4, 2022, Plaintiff initiated a follow-up call to Defendants to check on his lottery status. He was informed that, after doing some checking, they had discovered that his lottery win was an error.

20. Plaintiff was further informed that there was no housing lottery at that building nor any vacancies.
21. Plaintiff threatened Defendants that he would file a complaint with the New York City Department of Housing and Urban Development ("HUD") if they did not release his lottery.
22. Defendants admitted that he had won the lottery and apologized.
23. On August 10, 2022, Plaintiff submitted pertinent documents for rental. He also informed Defendants that he wanted to be moved into the apartment by the end of the month.
24. Plaintiff warned Defendants about discriminating against him on the basis of his race.
25. On August 17, 2022, Plaintiff received the first of what would become a litany of request for documents. He received a notification via email that he was missing several required documents.
26. Many of the documents that he was asked to provide were documents irrelevant to his particular case given that Plaintiff receives a Section 8 Housing Choice Voucher.
27. For instance, copies of his current electric bill posed no relevance to his move-in to 101 West End Ave., as they are paid by public assistance.
28. That same day, on August 17, 2022, Defendants contacted Plaintiff and demanded that he sign a "Self-Employment Financial Affidavit."
29. On September 13, 2022, Defendants abruptly denied Plaintiff's application without any justification.
30. On the same day, Plaintiff filed a complaint with HUD for the baseless denial of his application, as no logical reason justified the denial.
31. On September 15 and 16, 2022, Defendants were formally notified that a complaint had been filed with HUD.
32. On September 17, 2022, Defendants changed the status of Plaintiff's application back to "active" and stated that more documents were needed.
33. Defendants asked Plaintiff to "please keep in mind that as documents are received, we may need to request more information."
34. On or around September 24, 2022, Defendants demanded a copy of Plaintiff's birth certificate.
35. On September 24, 2022, Defendants demanded copies of Plaintiff's CashApp statements.
36. On September 24, 2022, Plaintiff completed a notarized Bank Deposit Clarification Affidavit demanded by Defendants.
37. On October 11, 2022, Defendants demanded a notarized "Self-Employment Affidavit" and "Tenant Income Statement."
38. Defendants requested the aforementioned documents and additional ones, completely unrelated to Plaintiff's lottery winning and apartment.
39. On October 12, 2022, Defendants once again tried to convince Plaintiff that he had not won any lottery.
40. On October 17, 2022, Plaintiff submitted a new set of financial documents upon request of Defendants.

41. On October 24, 2022, the New York City Housing Authority (NYCHA) extended the voucher due to delays from Defendants. Defendants attempted to fabricate a story that these documents were being collected for the city.
42. On November 7, 2022, Plaintiff received an email informing him that he had been approved for Apartment 7H at 101 West End Ave., following review of his documents. Plaintiff believed the deal had been completed at that time.
43. On November 17, 2022, Plaintiff received an email informing him that his lottery application of 3 years had been rejected after he had been approved to move into the unit.
44. Defendants claimed that he failed to come and see the apartment, the necessity of which was not made known to him as a requirement for move-in. He was denied entry the same day.
45. After threats to escalate the complaint, on November 22, 2022, Defendants handed out the lease for signing.
46. That same day, Plaintiff received a notice from HRA to apply for a vacant apartment which he refused.
47. On November 30, 2022, NYCHA issued the voucher and PIN letter for Plaintiff move into the unit.
48. On January 6, 2023, Defendants made another attempt to deny the lottery application on grounds that NYCHA was taking too long to process the payment voucher and that there were still missing documents.
49. Defendants demanded additional documents from Plaintiff's PayPal and CashApp accounts to process the application, which had already been approved.
50. On January 11, 2023, Plaintiff again complained of harassment.
51. On or around February 14, 2023, after the payment and HRA payments were made, Defendants demanded Plaintiff's tax records from the IRS and sent Plaintiff a form that bore no relevance.
52. It was at that point that the deal fell apart, and Plaintiff was completely shut out of the apartment.
53. Due to the aforementioned events, Plaintiff experienced severe and increased gastrointestinal problems, emotional pain and suffering, crying, inconvenience, loss of enjoyment of life, injury to character, injury to credit standing, loss of health, fright, shock, humiliation, indignity, loss of self-esteem, alcohol consumption, heavy drinking, anxiety, depression, loss of respect of one's friends and family, isolation, grief, and aggravation of a PTSD condition.

## FIRST CAUSE OF ACTION

### (Discrimination in Violation of 42 U.S.C. § 3604(a))

54. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth therein.
55. Defendants have discriminated against Plaintiff in violation of 42 U.S.C. § 3604(a).

56. Under the FHA, it is illegal for anyone "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).
57. To state a claim under the FHA, a plaintiff must plausibly allege that: (1) he was a member of a class protected by the FHA, and (2) he suffered an adverse housing action because of his membership in that protected class. *Mazzocchi v. Windsor Owners Corp.*, No. 11-CV-7913 (LBS), 2012 WL 3288240, at *7 (S.D.N.Y. Aug. 6, 2012).
58. Because Plaintiff is Black, he was subject to discriminatory treatment encompassing the aforementioned facts.

## SECOND CAUSE OF ACTION

### (Discrimination in Violation of NYSHRL § 296(2-a)(a))

59. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth therein.
60. NYSHRL § 296(2-a)(a) states: "It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of publicly-assisted housing accommodations or other person having the right of ownership or possession of or the right to rent or lease such accommodations . . . [t]o refuse to sell, rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodations because of the race . . . of such person or persons, or to represent that any housing accommodation or land is not available for inspection, sale, rental or lease when in fact it is so available." NYSHRL § 296(2-a)(a).
61. NYSHRL housing discrimination claims are analyzed under the same standard as claims made under the FHA.

## THIRD CAUSE OF ACTION

### (Discrimination in Violation of NYCHRL § 8-107(5)(a)(1)(a))

62. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth therein.
63. NYCHRL § 8-107(5)(a)(1)(a) states: "It shall be an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation, constructed or to be constructed, or an interest therein, or any agent or employee thereof [b]ecause of the actual or perceived race . . . of such person or persons, or because children are, may be or would be residing with such person or persons [t]o refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any such person or group of persons such a housing accommodation or an interest therein[.]"

64. NYCHRL housing discrimination claims are analyzed under the same standard as claims made under the FHA.

## **DEMAND FOR RELIEF**

Plaintiff requests that the Court enter judgment against Defendants CMP Consultants, Inc., Marita Ponce, Orlando Ponce, Dermot Realty Management Company, Inc., and 101 West End REIT, LLC as follows:

1. A finding that Defendants intentionally discriminated against Plaintiff based on his race as a Black African American in violation of his rights under the Fair Housing Act;
2. A finding that Defendants intentionally discriminated against Plaintiff based on his race as a Black African American in violation of his rights under the New York State Human Rights Law;
3. A finding that Defendants intentionally discriminated against Plaintiff based on his race as a Black African American in violation of his rights under the New York City Human Rights Law;
4. An award of actual and punitive damages in amounts to be determined at trial from Defendants CMP Consultants, Inc., Marita Ponce, Orlando Ponce, Dermot Realty Management Company, Inc., and 101 West End REIT, LLC for causing emotional distress to Plaintiff by refusing to provide him housing services.
5. Any further relief as this Court deems just.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: April 18, 2023

_____

Michael Reeves

217 Boerum St., Apt. 3B

Brooklyn, NY 11206

(212) 804-8432

marymary10023@gmail.com