UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL REEVES,

Plaintiff,

-v.-

CMP CONSULTANTS, INC. et al.,

Defendants.

23 Civ. 1308 (JHR)

OPINION & ORDER

JENNIFER H. REARDEN, District Judge:

Plaintiff Michael Reeves, proceeding *pro se*, brings this action against Defendants CMP Consultants, Inc., Marita Ponce,[1] Orlando Ponce (collectively, the "CMP Defendants"), Dermot Realty Management Company, Inc., and 101 West End REIT, LLC (collectively, the "Dermot Defendants") for violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq*. (the "FHA"), Article 15 of the New York State Human Rights Law, New York Executive Law § 290 *et seq*. (the "NYHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 to 8-131 (the "NYCHRL"). Before the Court are motions to dismiss (the "Motions") filed by the CMP Defendants and the Dermot Defendants. *See* ECF Nos. 46 (CMP Mot.); 49 (Dermot Mot.).

For the reasons stated below, the Motions are GRANTED.

## I. BACKGROUND

### A. Factual Background

The following allegations are drawn from the Second Amended Complaint.[2] *See* ECF No. 20 (Second Am. Compl.) (the "SAC"). In deciding this motion, the Court assumed these

[1] The CMP Defendants' motion to dismiss notes that the caption for this case incorrectly identifies Defendant Maritza Ponce as "Marita Ponce." CMP Mot. at 1 n.1. For consistency, the Court will continue to use Defendant Ponce's name as it appears in the caption.
[2] "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F.*

allegations to be true and construed them in the light most favorable to Plaintiff. *See, e.g., Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).

Plaintiff is "an African American man" who first moved into the neighborhood of 101 West End Ave. (the "Building") in April 1996, a time when the Building "was notoriously known by the community to not be welcoming to Black people." SAC ¶¶ 4, 10-12. The Building is owned by Defendant 101 West End REIT, LLC and managed by Defendant Dermot Realty Management Company, Inc. SAC ¶¶ 8-9. Defendant CMP Consultants, Inc. is an agent for the Building "specializ[ing] in Low-Income Housing Tax Credit Marketing and Compliance." *Id.* ¶ 5. Defendant Marita Ponce is the sole owner of CMP Consultants. *Id.* ¶ 6. Defendant Orlando Ponce is an employee of CMP Consultants with whom Plaintiff frequently corresponded." *Id.* ¶ 7.

In 2018, Plaintiff entered the New York City Affordable Housing Lottery for the Building. *Id.* ¶ 14. On August 3, 2022, "Plaintiff won the NYC Housing Lottery at [the Building] . . . [ and] was instructed by Defendants to send a copy of his ID and Social Security card in order to start the process." *Id.* ¶ 18.

On August 4, 2022, Plaintiff initiated a follow-up call to Defendants to check on his lottery status and was informed that, "after doing some checking, they had discovered that his lottery win was an error . . . [and] that there was no housing lottery at th[e] [Building] []or any vacancies." *Id.* ¶¶ 19-20. After Plaintiff "threatened Defendants that he would file a complaint with the New York City Department of Housing and Urban Development ("HUD")[,] . . . Defendants admitted that he had won the lottery and apologized." *Id.* ¶¶ 21-22. "On August 10,

---

*v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (citation omitted). Here, the Court considers the 25 exhibits Plaintiff has appended to the SAC. The Court does not consider the exhibits attached to the Motions.

2022, Plaintiff submitted pertinent documents for rental . . . [,] informed Defendants that he wanted to be moved into the apartment by the end of the month[,] [and] warned Defendants about discriminating against him on the basis of his race." *Id.* ¶¶ 23-24.

"On August 17, 2022, . . . [in] the first of what would become a litany of request[s] for documents[,] [Plaintiff] received a notification via email that he was missing several required documents." *Id.* ¶ 25. "That same day . . . Defendants contacted Plaintiff and demanded that he sign a 'Self-Employment Financial Affidavit.'" *Id.* ¶ 28. In an August 17, 2022 email to Plaintiff, Ponce stated that certain "required documents remain[ed] outstanding." SAC Ex. 3 at 11. After listing those documents, Ponce notified Plaintiff that, "***[o]nce these documents have been received and reviewed, additional documents may be requested.***" *Id.* at 12.

On September 13, 2022, Defendants "abruptly denied Plaintiff's application," prompting Plaintiff to file that same day a complaint with HUD for the baseless denial of his application, as no logical reason justified the denial." *Id.* ¶¶ 29-30. On September 15 and 16, 2022, Defendants were formally notified that a complaint had been filed with HUD. *Id.* ¶ 31. Next, "[o]n September 17, 2022, Defendants changed the status of Plaintiff's application back to 'active' and stated that more documents were needed." *Id.* ¶ 32. "Defendants asked Plaintiff to 'please keep in mind that as documents are received, we may need to request more information.'" *Id.* ¶ 33.

Over the next two months, Defendants repeatedly requested that Plaintiff provide certain documents for his application and Plaintiff repeatedly failed to provide those documents. *See id.* ¶¶ 18-40; *id.* Exs. 7, 8, 11. For instance, "[o]n or around September 24, 2022, Defendants demanded a copy of Plaintiff's birth certificate." *Id.* ¶ 35. In a September 24, 2022 email to the CMP Defendants, Plaintiff stated that he "d[id] not have [his birth certificate]." *Id.* Ex. 7 at 30.

On October 12, 2022, Defendants "once again tried to convince Plaintiff that he had not won any lottery." *Id.* ¶ 39. The October 12, 2022 email from the CMP Defendants to Plaintiff states:

> First, you have not won any housing lottery. You were selected in the housing lottery. Two, because you were selected in the housing lottery there is a processing phase. Three, besides you being selected, many other applicants were selected and also processed. Four, being select in the housing lottery does not guarantee you an apartment. Five, after a file has been completed, the applicants that are selected in the housing lottery must be approved by the NYC Agency. Six, as of today your file is **NOT** complete. Seven, after an applicant is approved in the housing lottery then there is a Leasing phase. Eight, if an applicant has Rental Assistance it may take up to 45 days to complete a move in. Nine, all approved applicant [sic] under the guideline must be in compliance all the way up to move in date. **Ten, did you mail me back the two forms that you received yesterday?** Any applicant, even if they are approved by the NYC agency must be in compliance all the way up to move in date. **THIS IN NO WAY GUARANTEES AN APARTMENT**.

*Id.* Ex. 11 at 44.

On November 7, 2022, Plaintiff received an email informing him that he had been approved for Apartment 7H [(the "Apartment")] at 101 West End Ave "and believed the deal had been completed at that time*."* *Id.* ¶ 42. On November 17, 2022, Plaintiff "received an email informing him that his lottery application . . . had been rejected" after he had "failed to come and see the [A]partment." *Id.* ¶¶ 43-44. The November 17, 2022 email from Ponce to Plaintiff states:

> [The CMP Defendants] were notified that [Plaintiff] did not appear to a scheduled appointment on Monday 11/14/2022 with the Management Office at 101 West End Avenue. Due to not appearing to your appointment and no communication with the management office your application on Housing Connect 2 was rejected. If you have communicated with management after your application was rejected you must log on to Housing Connect 2 and APPEAL.

*Id.* Ex. 13 at 52.

On January 6, 2023, Defendants "made another attempt to deny the lottery application on grounds that NYCHA was taking too long to process the payment voucher and that there were still missing documents" and "demanded additional documents from Plaintiff's PayPal and

CashApp accounts to process [Plaintiff's] application." SAC ¶¶ 48-49. On January 11, 2023, Plaintiff again complained of harassment. *Id.* ¶ 50. On or around February 14, 2023, "Defendants demanded Plaintiff's tax records from the IRS and sent Plaintiff a form . . . ." *Id.* ¶ 51. "It was at th[is] point that the deal fell apart, and Plaintiff was completely shut out of the [A]partment." *Id.* ¶ 52. Plaintiff emailed the following to Defendants and infohousing@dhr.ny.gov on February 7, 2023 at 2:02 p.m.:

> Dear NYC Division of Human Rights, . . . [a]s indicated, from the day of winning this lottery, the defendants have repeatedly created barriers. . . . I simply just need to just add my son to the lease, that is it. . . . If it was not but for racism and retaliation, they would have released the keys because their reasons for not releasing makes absolutely no sense at all. . . . This is another attempt to implement racism in housing. . . . This defendant still consistently creates unnecessary roadblocks, retaliation for my complaining, and rule[] enforcements to obstruct and delay my entry due to my race as a black man and my source of income. I have evidence you requested to prove and I will demonstrate a string and pattern of racist behaviors from this particular landlord.

SAC Ex. 23 at 43. The Dermot Defendants emailed the following to Plaintiff at 3:39 p.m. that day:

> We're not trying to punish you or block you from moving in. On the contrary, we want this resolved just as much as you do. But we are constrained by the requirements of HPD. As I had discussed with you over the phone, occupants listed on your NYCHA form must be listed on your lease and in order to have someone listed on your lease, they must be approved by HPD. If you had kept your son on the application when originally submitting it with CMP, we wouldn't be in this situation right now. Unfortunately, we now need to go through the process again to get him approved. If he has not yet, Orlando will be reaching out shortly with what is needed for Joshua's application.

*Id.* at 46. On February 14, 2023, Ponce emailed the following to Plaintiff:

> After further review . . . I noticed that you and Joshua did not sign and indicated REFUSE on . . . documents that are required by NYCHPD Guidelines in order for us to update your file . . . In addition[,] . . . you [did] not attach[] [the] Primary Residence [form] [for] Joshua [and] [the] Certification of Non Filing Income Tax return [for] Joshua. . . . The original signed forms must be received ***no later than Tuesday, February 21, 2023***.

SAC Final Ex. at 54. Plaintiff does not aver that he responded to, or submitted the documents identified in, Ponce's February 14, 2023 email.

### B. Procedural History

On February 15, 2023, Plaintiff filed the Complaint in this action, *see* ECF No. 2 (Compl.), a request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees, *see* ECF No. 1, an "unsigned order to show cause" requesting emergency relief, *see* ECF No. 3, and a supporting memorandum of law, *see* ECF No. 6. The Honorable Laura Taylor Swain, to whom this case was originally assigned, granted Plaintiff's request to proceed IFP on February 16, ECF No. 8, and, on February 22, issued an order denying Plaintiff's request for emergency relief and directing Plaintiff to amend his Complaint,ECF No. 10 (Order to Amend). In ordering Plaintiff to amend the Complaint, the Court explained that "Plaintiff's allegations are simply not enough to support his conclusory and speculative assertions that Defendants are discriminating against him on the basis of his race." *Id.* at 6-7 (citing *7 Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (conclusory allegations are insufficient to state a plausible claim of discrimination)). The Court therefore "grant[ed] Plaintiff leave to file an amended complaint to . . . plead enough factual detail to allow the Court to draw the inference that each defendant is subject to liability under the FHA for discrimination." *Id.* at 7. On April 26, 2023, Plaintiff filed the First Amended Complaint. *See* ECF No. 11. On May 4, 2023, Plaintiff filed a letter (dated April 28, 2023) "requesting permission from the court to add supplemental documents to the present amended complaint, or in the alternative, permission to file a second amended complaint." ECF No. 14.

On May 8, 2023, following reassignment to this Court, the Court directed the Clerk of Court to deliver all documents necessary to effect service on Defendants to the U.S. Marshals Service. ECF No. 15 at 2. The Court referred the case for General Pretrial Supervision to Magistrate Judge James Cott on May 10, 2023. *See* ECF No. 18. On May 11, 2023, Judge Cott granted Plaintiff "permission to file a second amended complaint, with any supplemental

documents." ECF No. 19. Plaintiff filed a Second Amended Complaint (the "SAC") on May 12, 2023. *See* SAC.

On July 31, 2023, the CMP Defendants moved to dismiss the SAC. ECF No. 34. On August 8, 2023, the Dermot Defendants likewise moved to dismiss the SAC. ECF No. 37. The CMP Defendants filed a motion for judicial notice in support of their motion to dismiss on August 29, 2023. *See* ECF No. 40. On September 27, 2023, Plaintiff filed his opposition brief. ECF No. 42. The Dermot Defendants replied on October 5, 2023, ECF No. 43, and the CMP Defendants replied on October 11, 2023, ECF No. 44.

On March 31, 2024, the Court denied without prejudice the CMP Defendants' and the Dermot Defendants' motions to dismiss for failure to comply with Local Rule 12.1. ECF No. 45. Specifically, even though the motions were, "in part, premised on materials outside of the pleading[s]," the CMP Defendants and the Dermot Defendants had not provided the requisite notice to the *pro se* Plaintiff "of the meaning and consequences of conversion to summary judgment" that could result from relying on such materials. *Id.* (cleaned up). In light of this denial, the Court also denied as moot the CMP Defendants' motion for judicial notice. *Id.* On April 15, 2024, the CMP Defendants and the Dermot Defendants refiled their motions, including the required notices under Local Rule 12.1. ECF Nos. 46-52. Plaintiff filed his opposition on June 18, 2024.[3] *See* ECF No. 57 (Opp.). The CMP Defendants filed their reply on July 1, 2024. ECF No. 59. The Dermot Defendants filed their reply on July 3, 2024. ECF No. 60.

---

[3] Plaintiff's opposition brief "was prepared with assistance from the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New York." ECF No. 57 at 1 n.1.

## II. LEGAL STANDARDS

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Courts "accept[] as true all material factual allegations in the complaint and draw[] all reasonable inferences in plaintiff['s] favor." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a court "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"Where, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Courts "look to see whether a *pro se* complaint contains sufficient factual allegations to meet the plausibility standard by reading the complaint with 'special solicitude' and interpreting it to raise the strongest claims it suggests." *Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 18 (2d Cir. 2011) (citations omitted). But "[p]ro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Azzarmi v. Key Food Stores Co-Operative Inc.*, No. 20 Civ. 6835 (GBD) 2021 WL 1734922, at *3 (S.D.N.Y. May 3, 2021) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Housing Discrimination

Plaintiff asserts housing discrimination claims under the FHA, NYSHRL, and NYCHRL. *See* SAC ¶¶ 54-64. Because "NYSHRL and NYCHRL housing discrimination claims are

analyzed under the same standard as claims made under the FHA[,] . . . the Court analyzes all of Plaintiff's housing discrimination claims together." *Dickerson v. BPP PCV Owners LLC*, No. 21 Civ. 9003 (RA), 2022 WL 4538281, at *3 (S.D.N.Y. Sept. 28, 2022) (cleaned up); *see also Skorupska v. 525 W. 52 Prop. Owner LLC*, 625 F. Supp. 3d 90, 108-09 (S.D.N.Y. 2022) ("[H]ousing discrimination claims under the NYSHRL and NYCHRL are evaluated using the same framework as claims under the FHA, and thus are appropriately analyzed alongside comparable housing discrimination claims brought under the FHA . . . ." (citations omitted)).[4]

"The FHA makes it unlawful '[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race . . . .'" *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72-73 (2d Cir. 2021) (quoting 42 U.S.C. § 3604(b)). "The NYSHRL and NYCHRL contain language that is substantively identical to that of . . . the FHA, differing in that the NYSHRL and NYCHRL cover a broader range of protected classes." *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 n.5 (S.D.N.Y. 2012) (citing N.Y. Exec. Law § 296(2-a), (5)(a); N.Y.C. Admin. Code § 8-107(5)(a)); *see Dickerson*, 2022 WL 4538281, at *3 n.4 (same).

---

[4] "The Second Circuit has suggested that a district court 'may' err by evaluating a housing discrimination claim brought under the NYCHRL together with comparable claims brought under federal or state statutes." *Skorupska*, 625 F. Supp. 3d at 109 n.16 (quoting *De La Fuente v. Sherry Netherland, Inc.*, 845 F. App'x 29, 33 (2d Cir. 2021) (summary order)). "Even under the NYCHRL's more permissive substantive standards, however, a plaintiff must still show that the conduct complained of was motivated 'at least in part' by their protected characteristic." *Id.* (quoting *De La Fuente*, 845 F. App'x at 33 (summary order) (affirming district court's grant of summary judgment to defendants as to housing discrimination claims brought under FHA and NYCHRL because plaintiff failed to show that defendants were motivated by discriminatory animus)). "Because the Court finds that Plaintiff has not made that minimal showing here, it does not separately address her discrimination claim under the NYCHRL." *Id.* (citing *Farkas v. River House Realty Co.*, 103 N.Y.S.3d 376, 377 (1st Dep't 2019) (holding that plaintiff could not state housing discrimination under NYCHRL where she had "failed to plead any concrete allegations in support of her claim that defendants were motivated" to take their alleged actions because of bias against her protected characteristic)).

"A plaintiff may show that a defendant has engaged in discrimination proscribed by the FHA . . . under 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" *Wilson v. Wilder Balter Partners, Inc.*, No. 13 Civ. 2595 (KMK), 2015 WL 685194, at *7 (S.D.N.Y. Feb. 17, 2015) (quoting *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir.2003)). Plaintiff's SAC alleges that "Defendants have discriminated against Plaintiff in violation of [the FHA]" and seeks "[a] finding that Defendants intentionally discriminated against Plaintiff based on his race." SAC at Demand for Relief. The Court therefore construes Plaintiff's SAC as alleging intentional discrimination.[5]

"When, as here, a plaintiff brings a claim under the FHA that does not rest on direct evidence of landlord discrimination, we analyze the claim under the familiar *McDonnell Douglas* burden-shifting framework first developed in Title VII cases[,] [in which] Plaintiffs have specific, 'reduced' pleading burdens . . . ." *Francis*, 992 F.3d at 73 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "For a plaintiff's claim to survive a motion to dismiss in a *McDonnell Douglas* case, he must plausibly allege that he '[1] is a member of a protected class, . . . [2] suffered an adverse . . . action, and [3] has at least minimal support for the proposition that the [housing provider] was motivated by discriminatory intent.'" *Id.*

---

[5] The SAC alleges that "101 West End Ave. was notoriously known by the community to not be welcoming to Black people," and that "there are hardly any Black residents residing at 101 West End Ave. despite the large Black population of the neighborhood," SAC ¶¶ 12-13. Plaintiff's opposition brief goes on to argue "that 101 West End's policies of requesting additional documentation and subjecting the applications of Black applicants to additional scrutiny have the result of screening out a disproportionate number of Black applicants, including himself." Opp. at 6. Even if the Court construed these statements as alleging a separate theory of disparate impact, Plaintiff's allegations would still be insufficient to survive a motion to dismiss, as they are "wholly conclusory." *Moody v. Related Companies, L.P.*, 620 F. Supp. 3d 51, 57 (S.D.N.Y. 2022) (dismissing unsubstantiated allegation that "Defendants' policies have an adverse and disproportionate impact on African Americans and Hispanics in New York City as compared to similarly situated whites").

(quoting *Littlejohn*, 795 F.3d at 311). "In other words, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is . . . at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Courts in this Circuit have observed that "[c]ommon to all housing discrimination claims . . . is the requirement that plaintiffs show that they were qualified for an available benefit and were denied that benefit." *Wood v. Mut. Redevelopment Houses, Inc.*, No. 19 Civ. 9563 (AT), 2021 WL 4255054, at *6 (S.D.N.Y. Sept. 17, 2021) (cleaned up); *accord Wilson*, 2015 WL 685194, at *7 ("Plaintiffs must allege '(1) that they are members of a protected class; (2) that they sought and were qualified to rent . . . the housing; (3) that they were rejected; and (4) that the housing opportunity remained available to other renters.'" (quoting *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir.2003)).

"Here, not only do[es] Plaintiff[] fail to 'allege facts from which the court can infer that [he] satisfied [the] necessary preconditions' to qualify for [the Apartment], but Plaintiff['s] Second Amended Complaint and the exhibits appended to it, which the Court may consider on a motion to dismiss, confirm that Plaintiff[] did not take the steps necessary to apply for the benefit that [he] seek[s]." *Wilson*, 2015 WL 685194, at *10 (citations omitted) (dismissing *pro se* complaint). In an email sent on February 7, 2023 at 2:02 p.m., Plaintiff stated that he "simply just need[ed] to just add [his] son to the lease." SAC Ex. 23 at 43. Later that day, the Dermot Defendants emailed Plaintiff explaining that "occupants listed on [Plaintiff's] NYCHA form must be listed on [his] lease and[,] in order to have someone listed on [his] lease, they must be approved by HPD . . . . Orlando [Ponce] will be reaching out shortly with what is needed for Joshua's [Plaintiff's son] application." SAC Ex. 23 at 46. On February 10, 2023, Ponce emailed Plaintiff, "[t]hank[ing] [him] for providing [his] documents" and explaining that "[Defendants]

[we]re in the process of preparing the required NYCHPD forms that [he] and Joshua need[ed] to sign . . . and return . . . in order to complete [Plaintiff's] updated file." SAC Ex. 24 at 51.

In an email dated February 14, 2023, Ponce informed Plaintiff that "[he] noticed that [Plaintiff] and [Plaintiff's son] did not sign and indicated REFUSE on . . . documents that [we]re required by NYCHPD Guidelines . . . . [i]n addition, [two] forms sent to [Plaintiff] were not attached." SAC Final Ex. at 54. Ponce's email notified Plaintiff that, "[w]ithout these forms [Defendants] [would be] unable to update and complete [Plaintiff's] file," and that "[t]he original signed forms must be received ***no later than Tuesday, February 21, 2023***." *Id.* (emphasis in original). Plaintiff does not allege that he submitted these forms by the February 21, 2023, deadline. Instead, Plaintiff avers that "[i]t was at th[is] point that the deal fell apart." SAC. ¶ 52.

Because Plaintiff does not claim that he fulfilled "a necessary precondition to rent[,] . . . . [the Court] cannot conclude that the [SAC] plausibly alleges [Plaintiff's] entitlement to the [Apartment]." *Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 176 (2d Cir. 2010) (summary order) (affirming dismissal of complaint asserting housing discrimination claims); *see also Wood v. Mut. Redevelopment Houses, Inc.,* No. 19 Civ. 9563 (AT), 2021 WL 4255054, at *6 (S.D.N.Y. Sept. 17, 2021) (dismissing complaint where "[p]laintiffs d[id] not claim that they followed the procedures to be considered for [the] apartment"); *Wilson*, 2015 WL 685194, at *11 (dismissing *pro se* complaint where "plaintiffs d[id] not claim that they followed the necessary procedures to apply for the . . . apartment").

The SAC also fails because, "[a]lthough Plaintiff has alleged that, as a Black []man, []he is a member of a protected class, h[is] complaint lacks even minimal factual support to raise an inference of discriminatory intent." *Dickerson*, 2022 WL 4538281, at *3. "Plaintiff does not allege, for example, that Defendant[s] made any 'invidious comments' about members of h[is] protected group . . . ." *Id.* at *4 (quoting *Littlejohn*, 795 F.3d at 312). Nor does Plaintiff

"identify any similarly situated comparators outside of [his] protected class who were treated more favorably than [he] was under comparable circumstances." *Id.* at *5; *see Jackson*, 450 F. App'x at 19 ("[Plaintiff's] bald assertions of discrimination . . . , unsupported by any comments, actions, or examples of similarly-situated individuals outside of [Plaintiff's] protected class being treated differently, from which we could infer that the defendants possessed a discriminatory or retaliatory motive, are implausible and insufficient to survive a motion to dismiss."); *Clinton Place Owners Inc. v. City of New Rochelle*, No. 13 Civ. 3793 (VB), 2014 WL 890482, at *3 (S.D.N.Y. Feb. 27, 2014) ("The amended complaint fails to state a claim . . . [as] plaintiffs have not alleged the . . . Defendants treated similarly situated persons or groups differently.").

Because Plaintiff has not alleged "minimal factual support to raise an inference of discriminatory intent[,] . . . [t]he Court . . . finds that Plaintiff has failed to state a claim that []he was discriminated against on account of h[is] race." *Dickerson*, 2022 WL 4538281, at *3-4 (dismissing *pro se* complaint's housing discrimination claims); *see also Kitchen v. Phipps Houses Grp. of Companies*, 380 F. App'x 99, 100 (2d Cir. 2010) (summary order) (affirming dismissal of complaint where, "[a]lthough [plaintiff] allege[d] . . . dissatisfaction with landlord-tenant proceedings, he fail[ed] to assert any facts that plausibly link these circumstances to his race"). As such, the Motions are granted, and the SAC must be dismissed.[6]

**B. Leave to Amend**

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up). The Second Circuit has made clear

[6] In light of the Court's dismissal for failure to state a claim upon which relief can be granted, the Court need not, and does not, reach the CMP Defendants' motion for judicial notice in support of the motions to dismiss. *See* ECF No. 48.

that "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up). "Although the Court is highly skeptical that Plaintiff will be able cure the deficiencies identified above," *Lin v. Lin*, No. 22 Civ. 9263 (RA), 2022 WL 16926295, at *2 (S.D.N.Y. Nov. 14, 2022), "it is conceivable that [he] could . . . correct . . . some of the[se] deficiencies," *Dickerson*, 2022 WL 4538281, at *7, and the Court grants Plaintiff leave to amend the Complaint.

## IV. CONCLUSION

For the foregoing reasons, the CMP Defendants' and the Dermot Defendants' motions to dismiss are GRANTED, and Plaintiff's Complaint is DISMISSED without prejudice. If Plaintiff intends to file a Third Amended Complaint, he must do so within 30 days of the date of this Order. **Failure to file any amended complaint within 30 days of the date of this Order may result in dismissal with prejudice of this case**.

The Clerk of Court is directed to terminate ECF Nos. 34, 37, 40, and 66.

SO ORDERED.

Dated: August 25, 2026
New York, New York

Jennifer H. Rearden
JENNIFER H. REARDEN
United States District Judge